**UNITED STATES**

v.

**Frank L. REISTER, 467 39 9221 First Lieutenant 0–2, U.S. Marine Corps Reserve.**

**NMCM 92 2604.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 April 1992.

Decided 20 June 1994.

David R. Dowell, Civilian Defense Counsel.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, Senior Judge, and DeCICCO and GUERRERO, JJ.

GUERRERO, Judge:

Contrary to his pleas, appellant was convicted by members of conspiracy to commit adultery, consensual sodomy, assault with a means likely to produce grievous bodily harm, six specifications of adultery (involving five women), and fraternization with a hospitalman apprentice (E–2) in violation, respectively, of Articles 81, 125, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 925, 928, and 934. He was sentenced to dismissal, confinement for seven years, and forfeiture of all pay and allowances. The convening authority approved the dismissal, forfeitures, and confinement for four years and suspended confinement in excess of two years. Appellant raised eleven assignments of error [1] and filed matter pur-

---

1. I. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

II. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

III. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

IV. PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS BY THE JUDGE ADVOCATE GENERAL OF THE NAVY VIOLATES PETITIONER'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (CITATION OMITTED.)

V. THE MILITARY JUDGE ERRED IN HIS EXPLANATION OF "BEYOND A REASONABLE DOUBT" DURING HIS INSTRUCTION ON FINDINGS.

VI. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT

suant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).[2]

Assignments of Error I through V have been decided adversely to appellant. *Weiss v. United States*, — U.S. —, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); *United States v. Mitchell*, 39 M.J. 131 (C.M.A.1994); *Victor v. Nebraska*, — U.S. —, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *United States v. Robinson*, 38 M.J. 30 (C.M.A.1993).

## CONSENT SEARCH

■ Appellant next argues that the military judge erred by not suppressing evidence gained as a result of a consent search of appellant's off-base quarters by a person appellant had invited to "house-sit" the quarters. Appellant, knowing that he was going on leave, discussed with Hospitalman Apprentice (HA) N the possibility of her feeding his cat while he was gone. As time progressed and appellant and HA N became friendlier and he learned that she was somewhat uncomfortable in her barracks room due to the presence of her roommate's boyfriend, appellant arranged with HA N for her to stay in his apartment near the beach, with the understanding that she would generally safeguard his possessions and feed the cat while appellant was away on leave. HA N thought that perhaps a "relationship" between herself and appellant was growing, as they had been out together and at appellant's apartment several times and had engaged in hugging and kissing. Record at 52–53. The day before departing on three weeks leave, appellant invited HA N to the apartment to show her how to operate electrical appliances and to provide her with the key to the apartment and a visitor's parking pass for the apartment complex. She took with her enough of her belongings to stay there for three weeks. HA N and appellant ended the evening's activities in the bed in his bedroom (the subject of rape and forcible sodomy allegations of which appellant was acquitted).

HA N testified on the motion to suppress that she understood she had full use of the apartment, that she could have company but "no loud parties," and that although she had originally thought she would be sleeping in the guest bedroom, it appeared to be used as a storage room so that she remained in the master bedroom. Record at 40–43. The first day of appellant's leave, HA N returned to the apartment after her normal day of work. She was looking around the apartment and noticed a logbook on a bookshelf in the bedroom. She looked into the book because she was interested in aviation and thought the book might contain information about appellant's flights. In addition to such information, she discovered a page of "conquests" which listed what she thought to be the sexual activities of appellant. Prosecution Exhibit 27. She also noticed a piece of paper which contained the word "Zovirax."

BY ALLOWING INTO EVIDENCE ITEMS THAT WERE OBTAINED THROUGH AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION.

VII. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT A FINDING OF GUILTY OF CHARGE IV AND ITS SPECIFICATION BEYOND A REASONABLE DOUBT.

VIII. THE CONVENING AUTHORITY ABUSED HIS DISCRETION BY SUMMARILY DENYING APPELLANT'S REQUESTS FOR DEFERMENT OF CONFINEMENT.

IX. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WHERE THE MILITARY JUDGE ALLOWED IN EVIDENCE IRRELEVANT AND INFLAMMATORY TESTIMONY OF MS. MICHELE F[ ] AND MS. BECKY W[ ] AND WHEN THE MILITARY JUDGE FAILED TO DECLARE A MISTRIAL WHEN THE MOTHER OF ONE OF THE "VICTIMS" ENGAGED IN PREJUDICIAL AND HISTRIONIC BEHAVIOR IN THE PRESENCE OF THE COURT MEMBERS.

X. THE STAFF JUDGE ADVOCATE SUBSTANTIALLY PREJUDICED THE RIGHT OF APPELLANT TO PRESENT CLEMENCY MATTERS TO THE CONVENING AUTHORITY BY FORWARDING CLEMENCY LETTERS FROM THIRD PARTIES TO LEAD DEFENSE COUNSEL CLOSE IN TIME OR AFTER THE CONVENING AUTHORITY TOOK ACTION UNDER R.C.M. 1107, THUS EFFECTIVELY PRECLUDING APPELLANT FROM SUBMITTING MATTERS RELEVANT FOR CONSIDERATION BY THE CONVENING AUTHORITY.

XI. THE SENTENCE IMPOSED IS UNDULY SEVERE.

**2.** All charges should be dismissed due to selective prosecution, and the consensual sodomy conviction is unconstitutional because it involved sodomy between heterosexual adults in private.

HA N spent only that one night in the apartment. Thereafter, she returned to feed the cat but did not sleep there.

Following her discovery of the logbook and paper, HA N talked to a friend of hers, who after hearing N's description of the sexual activities of the first evening, encouraged her to report the acts as rape. HA N at some point was referred to a prosecutor, who advised her that she might want to consent to a search of the premises in order that there would be evidence (in the form of pictures of the scene) to support her allegations. On 4 October, HA N consented to a search by agents of the Naval Investigative Service. Using the key provided her by appellant, HA N invited the authorities into the apartment, wherein the agents took pictures of the apartment, of the logbook pages described above (from which came the names of those women with whom appellant was charged with committing adultery) and of the piece of paper with the name of the medicine.

Appellant argues that HA N was without authority to consent to a search of his apartment, that she abandoned any authority she may have had over the premises when she did not stay there and by attempting to reach appellant to tell him she would not stay there. Appellant concludes that the evidence seized and any derivative evidence should have been suppressed.

Consent may provide the basis for performing a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Common authority over the premises or "other sufficient relationship" may provide the basis for "third party" consent. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock*, where a woman consented to the search of a bedroom leased by her boyfriend which she shared with him, the Supreme Court reasoned that co-inhabitants may have the right to permit inspection because the other inhabitants have assumed the risk that one of the inhabitants might permit a common area to be searched. In other cases, the marital relationship has provided the common authority, even though the relationship may be on the rocks. *See United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982) (wife

had moved out of apartment but had not abandoned marital abode totally). Military Rule of Evidence 314(e), following case law, permits consent by a third party if the party "exercises control over the property." *United States v. Clow*, 26 M.J. 176 (C.M.A.1988) (separated husband consented to search of wife's quarters to which he retained key and returned at unannounced intervals although he resided elsewhere).

In the instant case HA N was invited by appellant to occupy his quarters for three weeks in his absence and was provided the key to the quarters and access to the apartment complex. Appellant familiarized her with the apartment on the last evening before he left her in the apartment. He did nothing to exclude any portion of his apartment from her authority; in fact he shared his bed with her on the night before he left and left the spare bedroom in such a state that it was unlikely anyone would occupy it. Even though HA N attempted to give up her access, she was unsuccessful in doing so, and she retained the key and continued to return to the apartment on occasion to feed the cat. Appellant expected her to be present and to exercise dominion over the quarters. In short, HA N was installed by appellant as an inhabitant of the quarters, and she enjoyed a sufficient relationship to the premises and exercised sufficient control thereof to give a valid consent to a search under Mil.R.Evid. 314(e), *Matlock*, and *Clow*. Appellant assumed the risk that HA N would do what any occupant could do. Therefore, we find that the military judge did not abuse his discretion in denying the motion to suppress evidence gathered as a result of the search of appellant's quarters consented to by HA N.

## SUFFICIENCY OF EVIDENCE ON AGGRAVATED ASSAULT

■ Appellant contends that the evidence is legally and factually insufficient to sustain a guilty finding to Charge IV and its specification, a violation of Article 128, UCMJ. We disagree and find the evidence of assault with a means likely to produce grievous bodily harm, to wit consensual intercourse with a female without warning her he has genital herpes and without wearing a condom, suffi-

cient. Appellant admitted that he engaged in sexual intercourse with HA N on 22 September 1991, that he did not advise HA N that he had genital herpes, and that he did not wear a condom during the intercourse. Record at 898. Appellant's medical record showed that he had a recurrence of the virus on 4 September, and a hospitalman from the sexually transmitted disease clinic testified that he had advised appellant that he should not have unprotected intercourse within 14 to 21 days of an outbreak of the virus. This same witness had told appellant that he should advise any partner, whether or not lesions were present on appellant's penis, that he was infected. Record at 906. This witness had, however, told appellant that intercourse without protection was permissible if no lesions were present. A doctor testified that genital herpes causes lesions, both internally and externally (specifically in a woman's vagina and other internal organs) which can be extremely painful and that a woman infected with genital herpes may be advised if pregnant that a caesarean section is recommended to prevent the possibility of the infant contracting herpes encephalitis from contact with sores in the birth canal. Another doctor testified that she had hospitalized at least one woman with extremely painful internal herpes sores. Genital herpes is a virus which recurs at any time: although medication is prescribed to overcome the lesions, medication cures the symptoms, not the disease. The recurring nature of the disease, along with associated medical problems it can cause, permits it to be considered a means likely to produce grievous bodily harm. *See United States v. James*, 957 F.2d 679 (9th Cir.1992) (genital herpes considered "permanent bodily injury" under United States Sentencing Guidelines § 2A3.1(b)(4) for one convicted of aggravated sexual abuse). *See also United States v. Joseph*, 37 M.J. 392 (C.M.A.1993) ("offensive touching" when knowingly HIV-infected person engages in sexual intercourse without informing partner of his infection).

We conclude that when considering the evidence in the light most favorable to the Government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *See*

*United States v. Blocker*, 32 M.J. 281 (C.M.A. 1991). In addition, considering the evidence and allowing for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt. *See United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

## DENIAL OF REQUESTS FOR DEFERMENT OF CONFINEMENT

Assignment of Error VIII concerns the denial by the convening authority of two requests by appellant for deferment of confinement. Because the requests were denied without written reasons, appellant urges this Court to reassess his sentence and reduce the amount of confinement. Appellant's requests for deferment were both made prior to *United States v. Sloan*, 35 M.J. 4 (C.M.A. 1992), which held that the written denial of a deferment request must contain the rationale for the denial. Subsequent to *Sloan*, the staff judge advocate advised the convening authority of the decisional case law, and the convening authority memorialized the basis for the denials. Appellant petitioned this court to grant relief, and after oral argument extraordinary relief was denied with permission to raise the issue in the normal appellate process. We have examined both requests for deferral and the convening authority's reasons for having denied the requests, and we are convinced that the convening authority did not abuse his discretion in denying either request. Moreover, when taking action, the convening authority approved 4 years confinement, suspending that in excess of 2 years, so that appellant did not serve any confinement he would not have been required to serve if the deferment had been granted. We find no prejudice to appellant and conclude that no relief is warranted. *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992).

## INFLAMMATORY TESTIMONY

■ Appellant contends that the testimony of Ms. F and Ms. W was irrelevant and inflammatory. Ms. F testified to her relationship with appellant: where and how they met, her trip to Pensacola as his guest, her

pregnancy as a result of sexual intercourse which occurred during her visit to appellant, appellant's offer of marriage to her when she learned of the pregnancy, and the breakup of their relationship when the divorce appellant advised her he was seeking did not materialize. Appellant was convicted of adultery with Ms. F. Ms. W testified to meeting appellant at church, entering into a non-adulterous sexual relationship with him shortly before the date of the alleged rape and unprotected intercourse with HA N, his failure to advise her that he was infected with genital herpes and of intercourse on several occasions without benefit of condom. She also related what appellant had told her about the ills of fraternization in a period of time immediately before he began his relationship with HA N, with whom he was convicted of fraternizing. Appellant argues now that Ms. F should not have been permitted to testify to anything more than sexual intercourse with him, and that Ms. W provided no relevant testimony. At trial, appellant did not object to the testimony of either of these witnesses. While appellant might have objected during the trial that some of the testimony was not relevant and that some was more prejudicial than probative of any issue in question, he did not object. This was a hard fought trial, and civilian and military trial defense counsel strenuously objected to much of the evidence as well as raising several motions prior to evidence on the merits. During cross-examination of Ms. F and Ms. W, defense counsel painted appellant's sexual partners as willing participants rather than victims, and he no doubt felt that their testimony might lend credence to appellant's testimony (to follow later in the trial) that HA N was also a willing participant, not a rape victim. Indeed, the members acquitted appellant of rape and of forcible sodomy on HA N. We will not second guess a tactical decision by trial defense counsel to use these witnesses to his own ends. Once having used them without objection, appellant may not now complain of their testimony. This issue is without merit.

Appellant also contends that the mother of HA N was crying outside the courtroom following her testimony and that this crying was inflammatory. This information comes by way of an affidavit from appellant's fiancee. There is nothing on the record, by comment from defense counsel, the military judge or the members to indicate that the members heard or saw anything other than HA N's mother's testimony during aggravation. This contention is likewise without merit.

## CLEMENCY DOCUMENTS

 Two letters in support of clemency were sent directly to the convening authority by their authors. Apparently the letters were referred to the staff judge advocate who forwarded them on to the civilian defense counsel who was named by appellant to represent appellant post-trial. Appellant complains that the letters were forwarded tardily and that the staff judge advocate should have sent them directly to the convening authority. Appellant admits that his counsel received a copy of one letter, which was included in his clemency petition. The second letter was forwarded by the staff judge advocate on the very day the convening authority was taking action. The letter itself is undated, but the envelope is postmarked 24 October 1992, from Tampa, Florida. The staff judge advocate forwarded it to counsel on 3 November 1992. Rule for Courts–Martial 1105 provides an accused with the opportunity to provide matters in support of clemency to the convening authority. This Court has previously found that a convening authority has no obligation to consider matters submitted other than through an accused. *United States v. Wedler,* 35 M.J. 708 (N.M.C.M.R.1992). We find that the staff judge advocate properly forwarded the letters to counsel for action as counsel deemed appropriate. Even if the staff judge advocate erred by forwarding the letter, we find no prejudice to appellant: the eleven page post-trial submission by counsel, dated 27 October 1992, contained 31 enclosures, 25 of which were statements from persons other than appellant. The convening authority reduced the seven years confinement adjudged to four years and suspended two of those four years. We do not believe that the one additional letter (from the mother of a Ma-

rine whom appellant had assisted) would have resulted in any greater clemency.

## APPROPRIATENESS OF THE DISMISSAL

We specifically find that a dismissal is appropriate. The issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are likewise without merit: contrary to his position that he was singled out for prosecution for consensual sodomy, he was prosecuted for a variety of offenses, one of which was alleged forcible sodomy. In this instance, the scope of appellant's sexual activities and partners justified prosecution. Consensual sodomy, of which he was convicted, is a viable offense under military law. *United States v. Henderson*, 34 M.J. 174 (C.M.A.1992); *United States v. Fagg*, 34 M.J. 179 (C.M.A.1992).

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge MOLLISON and Judge DeCICCO concur.