# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.J. BRUBAKER, B.T. PALMER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JAMAR X. PERRY**
**MASTER-AT-ARMS (E-5), U.S. NAVY**

**NMCCA 201400425**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 6 August 2014.
**Military Judge:** Capt Andrew H. Henderson, JAGC, USN.
**Convening Authority:** Commanding Officer, Fleet Combat Camera Pacific, Naval Air Station North Island, San Diego, CA.
**For Appellant:** LT Ryan Aikin, JAGC, USN.
**For Appellee:** Maj Tracey Holtshirley, USMC.

**3 September 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

PER CURIAM:

A panel of officer members sitting as a special court-martial convicted the appellant, contrary to his pleas, of one specification of abusive sexual contact and one specification of assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 928.[1]  The members sentenced the appellant to reduction to pay

---

[1] The members acquitted the appellant of a second specification of abusive sexual contact under Charge I.

grade E-1 and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered the sentence executed.

The appellant raises two assignments of error: (1) that the military judge abused his discretion when he failed to find the two charges were an unreasonable multiplication of charges for findings; and (2) that the appellant's convictions on both charges were factually and legally insufficient.

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we find that no error materially prejudicial to substantial rights of the appellant occurred.

## Background

The events that are the subject of the charges occurred on the evening of 23 August 2012.  The victim, Mass Communication Specialist Second Class (MC2) ER, invited the appellant, whom she described as a co-worker and friend, to her apartment to study for an advancement exam.  The appellant was married and there was no prior romantic or sexual relationship between the appellant and MC2 ER.  For several hours they studied, socialized, and drank alcoholic beverages.  Three of the victim's friends also came to the apartment that evening, two of whom testified that the victim became progressively more intoxicated (e.g., noting she was "very wobbly," "slurring her speech really bad," had difficulty reading her phone, and had "flipped off the couch" onto the floor).  One friend recorded a short cellphone video of the victim as she lay on the floor, with her eyes shut, making unintelligible responses to questions.  Prosecution Exhibit 9.

Ultimately, two of the friends departed, leaving the third friend, Information Systems Technician Third Class (IT3) OS, the victim, and the appellant in the apartment.  MC2 ER and witnesses all testified there was no flirting or sexual conversation between the victim and the appellant during the evening.

MC2 ER began to feel sick and was photographed face down on a table.  PE 2.  She thereafter went into the bathroom, shut the door, and sat on the floor in front of the toilet.  She next remembers waking up when the appellant pushed the bathroom door open.  Her next memory is lying on her bed, with the appellant next to her.  He "was lifting up [her] shirt and pulling down

2

[her] bra, and ha[d] his mouth around [her] breasts."  MC2 ER "was crying and saying [to him that] 'he didn't have to do this and that [they] were friends and no a million times'."  She testified she told him "[no] a lot . . . [and that he was lifting up her shirt] "the whole time."  MC2 ER testified the appellant then climbed on top of her and rubbed his erect penis through her clothes.[2]  She next remembers being alone in her bedroom texting IT3 OS at 2357 the same night, complaining the appellant had assaulted her.

During the findings phase of the trial, the defense offered no evidence other than to recall the three witnesses who testified in the Government's case in chief.

Additional facts necessary for the resolution of particular assignments of error are included below.

## Unreasonable Multiplication of Charges

The appellant asserts now for the first time that Specification 1 of Charge I, abusive sexual contact,[3] and the single specification under Charge II, assault consummated by a battery,[4] constitute an unreasonable multiplication of charges for findings purposes.  We disagree.

The prohibition against unreasonable multiplication of charges is codified in RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.): "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."  This provides trial and appellate courts a mechanism to address prosecutorial overreaching by imposing a standard of reasonableness.  *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).  To determine whether the Government has unreasonably multiplied charges, we apply a five-part test:

---

[2] This testimony substantially related to Specification 2 of Charge I, of which the members found the appellant not guilty.

[3] Specification 1 of Charge I, a violation of Article 120, UCMJ, reads: In that [the appellant] . . . did at or near Le Mesa, California, on or about 23 August 2012, commit sexual contact upon [MC2 ER] by causing bodily harm to her, to wit: touching her breast with his mouth and tongue, and that the [appellant] did so without the consent of the said MC2 ER.

[4] The specification under Charge II, a violation of Article 128, UCMJ, reads: In that [the appellant] . . . did at or near Le Mesa, California, on or about 23 August 2012, unlawfully grab [MC2 ER] by grabbing her by the shirt and pulling her shirt up with his hands.

3

(1) Did the appellant object at trial?;

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Do the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Do the number of charges and specifications unreasonably increase the appellant's punitive exposure?; and,

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Id.* at 338.

First, the appellant did not object at trial. To the contrary, even though the military judge brought up the possibility of merging offenses during an R.C.M. 802 conference session, Record at 11, the appellant did not move the court to do so. Again later, the appellant's trial defense counsel reviewed the findings worksheet and declared it to be appropriate. *Id.* at 37. Later still, when specifically asked by the military judge, the appellant lodged no objection to the member's proposed findings instructions. *Id.* at 393. Recognizing counsel are presumed to be competent, we reasonably infer the decision to not object was intentionally made and will not second-guess trial defense counsel's strategic or tactical decisions. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). Accordingly, we find the first *Quiroz* factor weighs heavily in favor of the Government.

We find the second and third factors weigh in favor of the appellant. The Government argues the two offenses were primarily aimed at different criminal acts — the assault consummated by a battery specification was aimed at the offensive touching of the victim's clothing and the abusive sexual contact specification alleged the appellant's separate sexual misconduct by placing his mouth on her breasts. We disagree and find the Government's reliance on *Paxton* and *Stroud* misplaced. *United States v. Paxton*, 64 M.J. 484 (C.A.A.F. 2007); *United States v. Stroud*, No. 201100145, 2011 CCA LEXIS 482, unpublished op. (N.M.Ct.Crim.App. 7 Sep 2011) (*per curiam*). In *Paxton*, although committed on the same child victim on the same night, the accused's separately charged offensive conduct

4

included touching the victim's breasts, digital penetration, fellatio, and sexual intercourse. *Paxton*, 64 M.J. at 490. In *Stroud,* although again committed on the same child victim on the same night, the accused's separately charged offensive conduct included touching the victim's posterior and then engaging in additional separate graphic sexual acts. *Stroud*, 2011 CCA LEXIS 482 at *3. In both *Paxton* and *Stroud*, neither accused was separately charged with removing their victims' clothes before committing their offensive conduct, as the appellant was in this case.

We believe the facts of this case are more synonymous with the holding in *Solomon*, than with *Paxton* or *Stroud*. *United States v. Solomon*, No. 201100582, 2014 CCA LEXIS 599, unpublished op. (N.M.Ct.Crim. App. 21 Aug 2014) (*per curiam*). In *Solomon,* this court held the appellant's offensive conduct of exposing himself to his victim in order to affect the sexual contact was one transaction which became the basis of two separate charges, and thus found the second *Quiroz* factor favored the appellant. *Id*. at *5-6. *See also*, *United States v. Britton*, 47 M.J. 195, 197 (C.A.A.F. 1997) (conviction for rape held to be multiplicious with assault with intent to commit rape where the Article 134 offense was comprised of the accused dragging and throwing victim as a precursor to the actual rape). In this case, we similarly find the appellant's act of pushing up MC2 ER's shirt to expose her breasts, which he then touched with his mouth, was part of the same transaction. We weigh the second and third factors in the appellant's favor.

The fourth *Quiroz* factor weighs in the Government's favor because the military judge, at the request of the appellant, and without objection by the Government, merged the two offenses for sentencing. Record at 516. Thus, any overlap and the potential adverse effect on the appellant was completely eliminated. We further hold, however, that the appellant was not prejudiced with respect to sentencing, because the military judge treated the offenses as a single offense for sentencing. *Britton*, 47 M.J. at 199. Additionally, the jurisdictional limits on authorized punishments further prevented the appellant's punitive exposure from being unreasonably increased. *See, United States v. O'Neal*, No. 201100307, 2012 CCA LEXIS 688, unpublished op. (N.M.Ct.Crim.App. 17 May 2012) (*per curiam*).

Finally, the fifth factor also weighs in favor of the Government. First, the appellant concedes in his brief there is no evidence of prosecutorial abuse and second, we find no evidence of prosecutorial overreaching in the drafting and

5

charging abusive sexual contact and assault.  Overall, after balancing all the *Quiroz* factors, we do not find an unreasonable multiplication of charges.

## Legal and Factual Sufficiency

The second assignment of error claims that the findings of guilt to both charges are legally and factually insufficient. In accordance with Article 66(c), UCMJ, we review issues of legal and factual sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the elements beyond a reasonable doubt." *United States v. Dobson*, 63 M.J. 1, 21 (C.A.A.F. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  When testing for legal sufficiency, this court must draw every reasonable inference from the record in favor of the prosecution.  *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A. 1993); *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A. 1991).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of [this court] are themselves convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict.  *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

In order to convict the appellant of abusive sexual contact, the Government must prove, beyond a reasonable doubt, that (1) the appellant committed sexual contact upon the victim in that he touched her breasts with his mouth and tongue and (2) that the touching caused bodily harm as defined by Article 120 (d) and (g), UCMJ.  In order to convict the appellant of assault consummated by a battery, the Government must prove, beyond a reasonable doubt, that (1) the appellant did bodily harm to the victim and (2) the bodily harm was done with unlawful force or violence as defined by Manual for Courts-Martial, United States (2012 ed.), Part IV, ¶¶ 54b(2) and 54c(2).

In this case, the evidence of the appellant's guilt with regard to both offenses is clear.  At trial, in uncontroverted testimony, the victim testified she was intoxicated, sick, and asleep in the bathroom of her apartment; that the appellant pushed the door open; that she later awoke in her bed to find

6

him lifting her shirt up and pushing her bra down; that she tearfully and repeatedly told him "no;" that he placed his mouth on her breasts; and that he was sexually aroused (had an erection).  Additional evidence showed the victim and the appellant did not have a prior romantic relationship, and that there was no flirting or sexual conversation between them in the hours leading to the charged offenses.  Finally, the Government presented evidence, corroborated by text message exchanges, that the victim reported the offenses to a fellow petty officer that same evening.

After carefully reviewing the record of trial[5] and considering the evidence in the light most favorable to the Government, we are convinced that a reasonable fact-finder could have found all the essential elements to both offenses beyond a reasonable doubt.  Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are ourselves convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[5] Although the appellant asserts, via his Declaration submitted with his 31 March 2015 Motion to Attach, that the sexual contact was consensual, that the victim was coherent, and that she was afterwards not visibly upset, we denied that motion on 16 April 2015.  It is well-established that a Court of Criminal Appeals' assessment of an appellant's guilt or innocence for legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) and *United States v. Thomas,* 43 M.J. 550, 568 (N.M.Ct.Crim.App 1995) (*en banc*).  We also simultaneously denied the appellant's motion to attach photographs of text messages between the victim and appellant shortly after the offenses occurred.